STATE EX REL. O'DONNELL, ETC., V. ADAM SCHAFER ET AL.

**1. FAILURE TO SPECIFY OFFICE MAKES THE VOTE A NULLITY.**

Where three members are to be elected to the board of education, two of them for the full term of three years and one to fill an unexpired term of one year, and the names of six candidates appear on the ballots, but with nothing to indicate which are candidates for the long terms and which for the short term, there is no valid election, and the old board holds over, even though one set of candidates were regularly nominated at a party caucus as candidates for the different terms and properly certified to the board of elections.

**2. ADJOURNMENT SINE DIE NOT A RESIGNATION OF THE MEMBERS OF THE BOARD.**

The fact that the old board, acting upon the assumption that there has been a valid election, adjourned *sine die*, and the members of the old board holding over and the three candidates at the recent election who had received the highest number of votes and qualified as members, organized and elected officers as the new board of education, does not operate as a resignation of the old members and appointment of the candidates to fill the vacancies, as no such thing was intended.

QUO WARRANTO.

PARKER, J.

This is a proceeding in *quo warranto,* by the state of Ohio in the relation of O'Brien O'Donnell, by permission of the court heretofore granted to be given and prosecute in the place and stead of the prosecuting attorney of said county, for the purpose of determining the rights and titles of Adam Schafer and H. E. Riggs, as members of the board of education of Waynesfield township, Lucas county, Ohio, which office they claim to hold and exercise; and it having been made to appear to the court that the prosecuting attorney of the county was so interested as not to be qualified to commence proceedings, O'Brien O'Donnell was appointed to act in his place and stead. The case is submitted to us upon application for leave to file a petition; and while the petition does not set forth all the facts of which I may make mention, yet, by agreement of the parties, these facts have been brought to the knowledge of the court, and any amendment that may be required to the petition in order to make the record right will be made by leave of the court.

It appears that at the time of the spring election, in 1899, there were three positions upon the school board of that township to be filled: One in consequence of the expiration of the term of Charles Rodd; another in consequence of the expiration of the term of J. H. Binkley, and another because of a vacancy created in the board by the resignation of E. M. Cook. Cook had resigned some time before Louis Dennis had been appointed in his place, but under the statute this appointment would only be effective until the next spring election, in 1899, and, therefore, it became necessary to elect three members to fill the board. The time of Cook would have expired in the spring of 1900, and, therefore, there were two to be elected for the full terms of three years and one to be elected for the partial term of one year.

It appears that the members of the Democratic party of the district held a caucus at which they nominated Louis Dennis and Charles Rodd for the full term and Adam Schafer for the partial term of one year—the remainder of the term resigned by Cook; and that the members of the Republican party of the district also held a caucus and nominated G. B. Mouen and Dean Myers and H. E. Riggs, but without designating the term for which they were nominated, and in certifying these nominations to the board of elections, the officers of these caucuses certified in accordance with the action so taken.

But the board of elections failed to designate upon either the Republican or Democratic tickets the terms for which these candidates were standing, so that the Democratic ticket read: "District No. 2, for member board of education, Lewis Dennis; for member of the board of education, Charles Rodd; for member of the board of education, Adam Schafer," and the Republican ticket read in the same way, naming Mouen, Myers and Riggs.

At the election Mouen received 150 votes; Myers, 169 votes; Riggs, 185 votes; Dennis, 178 votes; Rodd, 240 votes, and Schafer, 295 votes. It will be observed that the candidates upon the Democratic ticket received a greater number of votes than were cast for the candidates on the Republican ticket whose names stood opposite to theirs respectively, and it was attempted to give some effect to this circumstance, upon the theory that since the name of Dennis was opposite to that of Mouen, therefore Dennis was a candidate against Mouen, and, having received a larger number of votes, he was elected and Mouen defeated; and so of Rodd, and so of Schafer. But we find no authority for determining the matter upon this theory. If any were elected at this election, it would seem to be the three who had the highest number of votes, and that three would be Riggs, Rodd and Schafer. The question arose as to who was elected, immediately after the election, and various opinions seem to have been entertained by the parties interested.

On April 17th, the old board met and transacted some business, and then—as the record states—adjourned *sine die*; and after a recess of ten minutes, the clerk called the meeting to order, and Schafer, Rodd and Riggs being present, were inquired of as to whether they had received their certificates of election and whether they had filed certificates of the costs of election, etc., and, answering that they had, Schafer and Rodd were sworn in as members of the board, and it appears that Riggs had already taken his oath before an officer authorized to administer the oath of office, as he might do under the statute. Thereupon these persons acting as members, and the three holding over, entered upon the transaction of business. They first undertook to organize by electing a president, and ultimately their ballots resulted in the election of Rodd as president of the board. They also elected Schafer as treasurer of the board; and when they came to the election of a clerk they were evenly divided, three voting for one candidate and three voting for another, so they did not elect a clerk and they thereupon adjourned without transacting any further business. Subsequently they attempted to hold meetings, but failed to obtain a *quorum*. Soon after this meeting the three holding over—as to whose title there is no question—and Rodd and Hatch, who were members of the old board of education—Rodd having stood for re-election—met and organized by electing a chairman of the meeting and subsequently a president of the board, and then they proceed to appoint Louis Dennis a member of the

board, to fill the vacancy which was assumed to exist; proceeding, as it will be observed, upon the theory that there had been no valid election in the spring of 1899, and that all members of the old board were holding over, except Dennis, whose time had expired by limitation, he having been appointed to fill the vacancy caused by the resignation of Cook. I should have said that certificates of election had been issued to Schafer and to Riggs, and I presume to Rodd also—though it is not shown here—and the following certificate had been filed with the board of education:

Canvass of the vote cast at the municipal election held in School District No. 2, Village of Maumee, Waynesfield township, Lucas county, Ohio, on the third day of April, 1899, for members of the board of education.

### DISTRICT NO. 2.

We hereby certify that:

G. B. Mouen had 150 votes for member of Board of Education, District No. 2.

Dean Myers had 169 votes for member of Board of Education, District No. 2.

H. E. Riggs had 185 votes for member of Board of Education, District No. 2.

Louis Dennis had 178 votes for member of Board of Education, District No. 2.

Charles Rodd had 240 votes for member of Board of Education, District No. 2.

Adam Schafer had 295 votes for member of Board of Education, District No. 2.

Adam Schafer, Charles Rodd and H. E. Riggs, having received the highest number of votes cast, are hereby declared elected.

There being nothing to designate who is entitled to the long or short term we have made no decision in regard to the same.

April 4, 1899.　　　　　　　　　　　　　J. M. WOLCOTT, J. P.

After this meeting, in which Riggs and Schafer participated and in which they elected a president of the board, certain of these members came together again and undertook to agree and arrange that Schafer should have the long term—in consideration of the fact that he had received a greater number of votes than Riggs; that Rodd should also have the long term, and that Riggs should have the short term—of one year.

We find no provision of law authorizing them to proceed in this way; no authority vested in any board or tribunal or person, other than the electors of the district, to determine in a case like this what person shall have the long term and what person shall have the short term.

The statute provides this method for the first election in a district. It is also provided by the statute that in case of a tie vote the result may be determined by lot; that under circumstances like these, where the board has been filled, and afterward it becomes necessary to elect for terms of different lengths, there is no method provided by law for determining which shall have the long term and which the other except for the electors to designate upon their ballots which they desire for the different terms, and that was not done in this case.

State ex rel. O'Donnell v. Shafer et al.

The question is, therefore, what, if any, effect had this attempted election at which these persons were voted for but the terms for which they were to be chosen were not designated on the ballot. Section 2966-32, Rev. Stat., provides as follows:

"All ballots shall be printed on the best quality No. 2 book paper, in black ink, and with the exception of the heading, which shall be in display, in brevier type, the name or designation of the office in lower case, and the name of the candidate therefor in capital letters, with a space of at least one-fifth of an inch following each name, etc."

Our attention is called to decisions of the courts of Illinois and Pennsylvania and Nebraska upon cases like this and under statutes containing substantially the same provisions as to the designation of the office, and it seems from those decisions that the designation of the term is a part of that which is included in the words "designation of the office." We think these decisions lay down correctly the law applicable to this case. The office may be, strictly speaking, a member of the board of education; but if it is for one year or for three years, we are of the opinion that the term also must be designated as a part of that required to appear under this section of the statute, and, independent of the statute, we think that a ballot that failed to designate the term, where there were different terms to be filled, would be void for uncertainty.

I read, briefly, from the case of Samuel Page v. John Kuykendal, 161 Ill., 319, as reported in 32 L. R. A., 656. This arose over the election of members of a board of education, and it appears that Page, Kuykendal, Rollings and Mott were voted for; that the whole number of votes cast for them respectively were: Page, 52; Kuykendal, 13; Rollings, 50, and Mott, 11, but that all of the ballots excepting nine failed to designate the terms for which they were to be chosen, and these nine were cast for some of those who received less than a majority of all the votes cast; and the Supreme Court of Illinois held that the ballots which failed to designate the terms were void, and that they should be cast out and not counted, and they proceeded to judgment accordingly. In the course of the opinion Carter, J., says:

"Appellant contends that as the only office to be filled at this election was school director it was not necessary that the office should be designated on the ballot to make the intention of the voter clear. It is plain, however, that if this contention were conceded, notwithstanding the statute requires such designation, it is still wholly uncertain which of the two persons whose names are on the ballot the elector intended to vote for for the long term and which for the short term. This choice could be determined only by the voter himself as expressed by his ballot, and when the ballot wholly fails to express the choice it is void and cannot be counted."

And, further along, he continues: "It is plain that where there are more offices than one to be voted for, ballots making no designation of the office will be insufficient for uncertainty, and where there are two officers to be elected for different terms, ballots which do not designate the terms should be rejected."

To the same effect are cases found in 96 Penn. St., 222, and in the same volume, at page 224; 152 Penn. St. 544, and 5 Neb., 165; and we find no authorities holding the contrary doctrine. Indeed, we cannot see how the contrary doctrine could well be held; if the electors fail to designate the term upon their ballots, the election must fail necessarily because of the impossibility of determining their purpose and their choice.

It is suggested here, in argument, that in the cases cited to which I have referred, a part only of the ballots were invalid on account of this uncertainty and a part were valid, and that, therefore, there was an election in those cases which was recognized as a valid election by the court; and it is said that those cases are not applicable and ought not to be given effect here because of the circumstance that here, applying the rules laid down in those cases, all of the ballots were invalid, and, therefore, that it would be necessary in applying those principles to hold that the election here was altogether futile—that there was no election—and that those principles ought not to be applied where the result would be the setting aside of the election altogether. But the ballots were cast out in those cases because they were void, and we cannot discover that it helps the case of the defendants here that all instead of a part only of the ballots were void. Naught times naught is naught, and no matter how many times multiplied still continues to be naught. If the ballots were invalid, that seems to be the end of it; they cannot be made valid by the circumstance that they are all equally invalid; and we think the necessary result is that there was no election, and that, therefore, under the provisions of sec. 3908, Rev. Stat., Rodd and Binkley will hold over.

It is said that because the old board met on the 17th and adjourned *sine die*, and thereupon the three members as to whose holding there is no question remained and organized with Rodd, Schafer and Riggs, that some effect should be given to that action; that it amounted in effect to the resignation of these persons who participated in the action of adjourning *sine die* and departing, and that it also amounted in effect to the appointment to their places of Riggs and Schafer, who remained and participated in the business of electing a president, etc.

In the first place, there was no purpose on the part of anybody to resign or to appoint anybody. These persons whose terms had expired were then proceeding upon the notion that Riggs and Schafer had been elected and they were acquiescing in Riggs and Schafer taking part as members of the board because they supposed they had been elected. The adjournment *sine die* did not amount to a resignation on the part of those who departed any more than on the part of those who remained. It was a proper action for the old board to take. In any event it would not amount to anything more than adjourning to the time of the next regular meeting as fixed by the statute and by their rule; and we think there was no vacancy within the meaning of sec. 3981, Rev. Stat., and, therefore, it would not be competent for them to make a valid appointment of anybody to take the place of the old members. The old members held over (there having been no valid election) under the statute. There was no vacancy excepting that which existed by reason of the resignation of Cook, whose place had been filled by the appointment of Dennis, and which was subsequently filled by the five members by the re-appointment of Dennis. We think that those members constituted a legal board of education for that township district, and, therefore, the judgment of the court should be and will be that Riggs and Schafer shall be ousted, and judgment will go against them for the costs. There is a prayer that the others shall be inducted into the office, but we do not understand that that is a proper order to be made in a case presented in this way—on the relation of a party other than the one claiming the office; but they are in office; they are the lawful incumbents and will not be interfered with, and the judgment will be entered, as stated.

*O'Brien O'Donnell*, for prosecution.